NUMBER 13-99-073-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________



MARTIN D. DeLEON, Appellant,



v.




LETICIA D. DeLEON, Appellee.

____________________________________________________________________



On appeal from the 343rd District Court of Aransas County, Texas.


____________________________________________________________________



O P I N I O N



Before Chief Justice Seerden (1) and Justices Dorsey and Yañez 

Opinion by Justice Yañez


 Appellant, Martin DeLeon, and appellee, Leticia DeLeon were divorced in November 1998. Martin challenges the
division of the marital estate. We affirm.

Background

 Martin and Leticia were married in 1980. The marriage produced three children, two boys and a girl. The girl suffers from
a heart condition which has required medical care from early in her life. During the marriage, Leticia's parents gave her
property in Aransas County, located on Verne Street. Leticia's family constructed a small home on this lot. An adjacent lot
was purchased by Leticia and Martin, also during the marriage, from Leticia's brother, with a deed showing Leticia, alone,
as the grantee. The couple added several improvements to the property, including a garage, which was later enlarged and
converted into an efficiency apartment. Martin moved into the efficiency apartment when the marriage became untenable.

 In 1992, the couple finished making payments on a one-acre tract of land located on Alexander Drive. Before the couple
finished purchasing the property on Alexander Drive, Leticia and the children were injured when a car struck the family's
van while Leticia was driving. Martin was not in the van at the time of the accident. The company insuring the driver who
struck Leticia paid for medical attention to Leticia, repairs to the van, and for a spa to be used by Leticia for therapy. 
Ultimately the insurance company paid $150,000 as a settlement for any claims arising from the accident. Additional
amounts were paid, by three separate checks, for injuries suffered by the children.

 The couple used the $150,000 to open a savings account and a certificate of deposit. A third account was opened as a
"working account," into which was deposited interest earned on the first two accounts, withdrawals from these accounts,
and money earned by Leticia and Martin. Ultimately, the savings account and certificate of deposit were completely
depleted. 

 The bulk of the settlement money was used in constructing a house on the property on Alexander Drive. The money was
also used to purchase a pick-up truck driven by Martin and for other miscellaneous expenses. 

 In 1995, Leticia withdrew $4,500 from the working account to purchase a five- acre tract of land on Jacoby Lane, in
Aransas County.

 Leticia filed for divorce on July 24, 1997, alleging that "discord or conflict of personalities" had arisen, destroying the
"legitimate ends of the marriage relationship and prevent[ing] any reasonable expectation of reconciliation." Martin filed
an answer and cross-petition for divorce. Following a trial to the bench, the trial court awarded the house on Alexander
Drive, the property on Jacoby Street, and one-half of the property on Verne Street to Leticia. Martin was awarded the half
of the property on Verne Street which included the efficiency apartment in which he was living at the time of the divorce. 
The trial court awarded to each party the personal property already in their possession or control.

 With three issues, Martin challenges the property division ordered by the trial court.

Martin's Challenges

 With his first issue, Martin argues that the house was improperly awarded to Leticia. Martin contends that the evidence
was legally and factually insufficient to support the trial court's characterization of the settlement money from the insurance
company as Leticia's separate property, and that, because this money was used in constructing the house on Alexander
Drive, the court erred in finding the house to be Leticia's separate property. In the alternative, Martin argues that if the
settlement money was Leticia's separate property, it was commingled with community funds, and Leticia failed to
adequately trace the funds. 

 A "no evidence" standard of review is applied when the party not bearing the burden of proof challenges a finding of fact
by arguing that the evidence is legally insufficient to support the finding. Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex.
App.--Corpus Christi 1990, writ denied)(citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983)). If any evidence of
probative value supports the finding, we must uphold the jury's finding. Id. When reviewing a legal sufficiency challenge,
we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that
party's favor. Associated Indem. Corp. v. CAT Contracting, 964 S.W.2d 276, 286 (Tex. 1998); Norwest Mortgage, Inc. v.
Salinas, 999 S.W.2d 846, 853 (Tex. App.--Corpus Christi 1999, pet. denied). A legal sufficiency challenge is sustained
when the record discloses: 

(1) that there is a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no
more than a scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact.



Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Norwest Mortgage, 999 S.W.2d at 853. 

 When considering a factual sufficiency challenge, we overturn findings only if they are so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); In re
Cummings, 13 S.W.3d 472, 477 (Tex. App.--Corpus Christi 2000, no pet.). 

 In a bench trial, the trial judge passes judgment on the witnesses' credibility and the weight given the witnesses' testimony,
and can reject or accept any witness's testimony in whole or in part. In re Cummings, 13 S.W.3d at 476 (citing Bocquet v.
Herring, 972 S.W.2d 19, 22 (Tex. 1998)). When confronted with conflicting testimony, we defer to the determination of
the trial judge, who is the sole judge of the credibility of the witnesses. Maeberry v. Gayle, 955 S.W.2d 875, 880 (Tex.
App.--Corpus Christi 1997, no writ) (citations omitted). While an appellate court may not have reached the same findings,
it may not substitute its judgment for the trial court's judgment. Humphrey v. Camelot Retirement Community, 893 S.W.2d
55, 58 (Tex. App.--Corpus Christi 1994, no writ). The standards for reviewing the legal and factual sufficiency of the
evidence supporting the court's findings of fact are the same as the standards applied in reviewing the legal and factual
sufficiency of the evidence supporting a jury's finding. Id. In a case tried to the court, the findings of fact have the same
force and effect as a jury's verdict upon the questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991);
Vandiver v. Vandiver, 4 S.W.3d 300, 301 (Tex. App.--Corpus Christi 1999 pet. denied).

The Settlement Money

 Money recovered as compensation for personal injuries sustained by a spouse is the separate property of that spouse. Tex.
Fam. Code Ann. § 3.001 (Vernon 1998);Licata v. Licata, 11 S.W.3d 269, 273 (Tex. App.--Houston [14th Dist.] 1999, pet.
denied). When a spouse receives a settlement from a lawsuit during marriage, some of which could be community
property, that spouse bears the burden of demonstrating that the settlement is her separate property. Licata, 11 S.W.3d at
273. Not all personal injury damages are separate property; damages such as lost wages and medical expenses are
recoverable by the community estate. Slaton v. Slaton, 987 S.W.2d 180, 183 (Tex. App.--Houston [14th Dist.] 1999, pet.
denied). To overcome the presumption that all property received during marriage is community property, the spouse
claiming a settlement as separate property must produce clear and convincing evidence showing that the recovery is
compensation solely for the personal injury of that spouse. Tex. Fam. Code Ann. § 3.003 (Vernon 1998); Licata 11 S.W.3d
at 273;Faram v. Gervitz-Faram, 895 S.W.2d 839, 842 (Tex. App.--Fort Worth 1995, no writ).

 Clear and convincing evidence is "that measure or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be established." Transportation Ins. Co. v. Moriel, 879
S.W.2d 10, 31 (Tex. 1994). The clear and convincing standard of proof required to overcome the community property
presumption is applicable only to trial courts and does not alter the appropriate sufficiency of the evidence standard of
appellate review. Faram v. Gervitz-Faram, 895 S.W.2d at 842 (citing In the Interest of A.D.E., 880 S.W.2d 241, 245 (Tex.
App.--Corpus Christi 1994, no writ)).

 In the instant case, Martin argues that the settlement award included reimbursement to the community estate as well as an
award to him personally. The evidence before the trial court as to the nature of the settlement award included testimony by
Leticia and Martin, the written release, and checks from the insurance company. The release is signed by both Martin and
Leticia, and states that it discharges all persons for "damage to property, bodily injuries or death" resulting from the auto
accident. The trial court heard testimony that, before the final settlement, the insurance company had paid several thousand
dollars for Leticia's medical expenses and for the property damage done to the DeLeon's van. Copies of checks from the
insurance company were also admitted in evidence. 

 Leticia brought forth sufficient evidence to rebut the presumption of community property. Evidence in the record shows
that the insurance company had already reimbursed the community estate for medical expenses and property damage. 
Martin admitted during closing arguments that there were no lost wages. 

 Martin failed to bring forth sufficient evidence to support his claim that part of the settlement was his separate property. 
According to his own testimony, as well as Leticia's, Martin was not in the van when the accident occurred. Martin's sole
claim entitling him to a portion of the settlement was for loss of consortium. Martin claimed that he raised the loss of
consortium claim to the insurance company, resulting in an increase in the settlement offer. Leticia stated that she had
never heard the word "consortium" until the divorce proceedings and further testified that Martin suffered no loss of
consortium because she and Martin, although still living together, were estranged by the time of the accident. 

 To support his argument that part of the settlement award was his separate property, Martin relies heavily on the fact that
he signed the release. A spouse's signature on a release is not dispositive of the nature of the settlement award. Licata, 11
S.W.3d at 274. The only evidence supporting Martin's claim that the settlement included an award of money to him for
loss of consortium is his own testimony. The trial court, as trier of fact, determines the credibility of the witnesses, and in
this case accepted Leticia's testimony rather than Martin's.

 Leticia brought forth clear and convincing evidence that the insurance company had already reimbursed the community for
those damages suffered by the community and that the $150,000 was reimbursement to her for her personal injuries. The
community property presumption was rebutted. Martin failed to bring forth sufficient evidence that he was entitled to a
portion of the award. The trial court did not err in finding the settlement to be Leticia's separate property. 

The House

 Martin argues that, even if the settlement award was Leticia's separate property, the trial court erred in finding that the
house at 604 Alexander Drive is Leticia's separate property. Martin argues that the settlement funds were commingled with
community property and Leticia failed to trace the use of the settlement funds in constructing the house. 

 At the trial, evidence and testimony was presented that the entire settlement of $150,000 was placed into a certificate of
deposit and a savings account. A third account was opened and used as the family's working account. Interest from the
settlement accounts as well as other community funds were deposited into the working account. Money was also
transferred from the settlement accounts until, ultimately, they were completely depleted. The house was built over a
twenty-six month period; during construction, over $96,000 was spent on building materials and contractors. Community
expenses exceeded the amount of money deposited by the community into the working account; thus, Leticia's separate
money was used to pay some of the community expenses, as well as funding the construction of the house.

 If a bank account contains both community and separate funds, we presume that the community funds are drawn out first,
before separate funds are withdrawn. Welder v. Welder, 794 S.W.2d 420, 433 (Tex. App.--Corpus Christi 1990, no writ). In
order to apply the presumption that community funds were withdrawn first, there must be clear evidence of the transactions
affecting the commingled account. Id. at 434. In the instant case, the evidence of the transactions affecting the
commingled account included testimony from both Leticia and Martin, an accountant called by Leticia to trace her separate
funds, and banking records. The evidence was both legally and factually sufficient to support the trial court's conclusion
that the house was Leticia's separate property. Martin's first issue on appeal is overruled.

Reimbursement

 With his second issue on appeal, Martin argues that the community estate was entitled to reimbursement for the time and
effort he expended in the construction of the house at 604 Alexander Drive.

 A claim to reimbursement arises when community time and labor are utilized to benefit a spouse's separate estate. Vallone
v. Vallone, 644 S.W.2d 455, 459 (Tex. 1983). Reimbursement is an equitable right which arises upon the dissolution of a
marriage. Id. at 458-59. Reimbursement is not available as a matter of law, but lies within the discretion of the court. Id.
At 459. The discretion afforded the trial court in deciding and evaluating a claim for reimbursement is as broad as the
discretion afforded the trial court in making a just and right division of the community estate. Gutierrez v. Gutierrez, 791
S.W.2d 659, 663 (Tex. App.--San Antonio 1990, no writ) (citing Penick v. Penick, 783 S.W.2d 194, 198 (Tex. 1988)). The
party making a claim of reimbursement carries the burden of proof. Jensen v. Jensen, 665 S.W.2d 107, 110 (Tex. 1984);
Vallone, 644 S.W.2d at 459. 

 Martin testified that he had served as the general contractor on the construction of the house at 604 Alexander. Leticia
testified that both she and Martin acted as contractors. Leticia stated that Martin contacted the subcontractors and
negotiated as to prices and materials, but ultimately the decisions were subject to her approval or disapproval. The only
evidence as to the value of Martin's services was his own testimony that his work was worth "maybe between forty-five to
fifty thousand dollars." 

 The trial court could have decided, based on this evidence, that Martin served as general contractor for the house. 
However, the court could also have decided that Martin was acting more as an agent for Leticia than as a general
contractor. In its capacity as trier of fact, the trial court was also within its discretion to decide that Martin's testimony
about the value of his services was not credible. Martin offered nothing more than his own statements to support his claims
as to the value of any services he actually rendered. We cannot say, on the record before us, that the trial court abused its
discretion in denying Martin's claim for reimbursement. Issue number two is overruled.

The Division of the Marital Estate

 Martin's final issue on appeal is a general challenge to the trial court's division of the marital property. Trial courts are
given wide discretion when dividing the marital estate. Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996); Vandiver v.
Vandiver, 4 S.W.3d 300, 303 (Tex. App.--Corpus Christi 1999, pet. denied)(opinion on rehearing).

The trial court is presumed to have exercised its discretion properly. Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981);
LeBlanc v. LeBlanc, 761 S.W.2d 450, 452 (Tex. App.--Corpus Christi 1988), writ denied per curiam, 778 S.W.2d 865
(Tex. 1989). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action, but whether the court acted arbitrarily or unreasonably. LeBlanc, 762 S.W.2d at
452. The burden is on the appellant to demonstrate from the record that the trial court's division is so manifestly unfair and
unjust as to constitute a clear abuse of discretion. Welch v. Welch, 694 S.W.2d 374, 376 (Tex. App.--Houston [14th Dist.]
1985, no writ).

 A trial court is not required to divide marital property equally. Murff, 615 S.W.2d at 698-99. In exercising its discretion in
dividing the estate, the trial court:

may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived
from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial
condition and obligations, disparity of ages, size of separate estates, and the nature of the property.



Id. at 699. The trial court may also consider the disparity in earning capacities or incomes. Id.

 Martin argues that the court improperly awarded Leticia the property located on Jacoby Lane as her separate property. 
Martin cites only one page of the record to support his argument that the Jacoby Lane property was community property. 
That page is a diagram showing how funds were deposited into the couple's working account, and does not contain any
reference to the Jacoby Lane property. Martin cites no other part of the record, nor does he cite to any authorities to support
his contentions. The arguments in an appellant's brief must be supported with citations to the record and to authorities. 
Tex. R. App. P. 38.1(h). "It is not the duty of an appellate court to seine the record in order to discover, if possible, error by
the trial court; it is the duty of an appellant to distinctly point out the alleged errors and where they can be found in the
record." Harkins v. Dever Nursing Home, 999 S.W.2d 571, 572 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Failure
to include appropriate citations results in a waiver of the argument. CherCo Properties, Inc. v. Law Snakard & Gambill,
P.C., 985 S.W.2d 262, 266-67 (Tex. App.--Fort Worth 1999, no pet.);Lueg v. Lueg, 976 S.W.2d 308, 312 (Tex.
App.--Corpus Christi 1998, pet. denied). By failing to include citations to the record sufficient to point out the alleged error,
Martin has waived any argument that the Jacoby Lane property was incorrectly found to be Leticia's separate property. 

 Martin also raises a question concerning the trial court's award in his favor of one-half of the Verne Street property that,
according to the court's conclusions of law, is Leticia's separate property. Martin states, however, that he "recognizes that
he lacks standing to argue that the court divested [Leticia] of her separate property." We consider his assertion that he lacks
standing to constitute a waiver on Martin's part of any claim that the trial court abused it's discretion in depriving Leticia of
her separate property. Leticia does not challenge this award.

 Martin argues that the trial court's division of the community estate was unjust. Because the trial court found all the real
estate involved in this marriage to be the separate property of Leticia, the only community property to be divided was
personal property. The trial court chose not to award either party the personal property they requested, instead awarding to
each party the personal property in that party's possession at the time of the divorce. According to his brief, Martin
received personal property valued at $8,500, compared to the personal property awarded to Leticia, which, Martin alleged,
was worth approximately $21,500. 

 We do not find this division to be unjust. Leticia still suffers from physical problems as a result of the auto accident,
having chosen to forego surgery because she feared that it could result in her being paralyzed and unable to care for the
couple's daughter, Marissa. Leticia's salary has never been equal to Martin's. Leticia was also given a larger portion of the
debt accrued in the marriage. The court was within its discretion in awarding an unequal share of the community property
to Leticia. Issue number three is overruled.

 The judgment of the trial court is AFFIRMED.


 

LINDA REYNA YAÑEZ

Justice





Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

8th day of March, 2001.

1. Retired Chief Justice Robert Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant
to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).